UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

National Labor Relations Board,              Case No. 11-mc-51480

                Plaintiff,              Mark A. Goldsmith

v.                                                             United States District Judge

Center Construction Company, Inc.,          Michael Hluchaniuk
                                                               United States Magistrate Judge

                Defendant.

_____/

**REPORT AND RECOMMENDATION**
**<u>PLAINTIFF'S MOTION FOR CONTEMPT (Dkt. 27)</u>**

## I.     PROCEDURAL HISTORY

       The present litigation was initiated in this court on November 21, 2011, by

the filing of a consent judgment against Center Construction Company, Inc. d/b/a

Center Service System Division (Center Service) based on violations of § 8(a)(1)

of the National Labor Relations Act, 29 U.S.C. § 151 *et seq*.  (Dkt. 1).  Almost a

year later, on October 25, 2012, plaintiff National Labor Relations Board (NLRB)

filed an *ex parte* application for a writ of garnishment and a protective restraining

order seeking to garnish assets of Home Service Center, LLC (Home Service)

based on the claim that Home Service was the alter ego of Center Service and

therefore, Home Service should be responsible for the debt owed by Center

Service.  (Dkt. 2).

An *ex parte* protective restraining order (PRO) was issued on October 29, 2012 (Dkt. 4) and a writ of garnishment was issued on November 1, 2012, to Fifth Third Bank regarding accounts of Home Service at that bank.  (Dkt. 6).  The PRO contained restrictions on the expenditure of funds by Home Service until the judgment of $189,421.43 was paid.

Home Service was served with the PRO and, on November 5, 2012, filed an emergency motion to vacate the PRO.  (Dkt. 8).  A response to the motion to vacate was filed on November 7, 2012. (Dkt. 10).  A hearing on the motion to vacate took place on November 8, 2012.  The PRO was not modified as a result of the hearing but the writ of garnishment was vacated by the stipulation of the parties on November 15, 2012. (Dkt. 15, 16).  It was also determined at the November 8, 2012, hearing that an evidentiary hearing should be scheduled regarding the alter ego issue and that a status conference would take place on December 10, 2012.

An evidentiary hearing was scheduled to take place on December 19, 2012. (Dkt. 12).  The NLRB supplemented its response to the motion to vacate on November 29, 2012.  (Dkt. 18-20).  At the scheduled evidentiary hearing on December 19, 2012, an issue arose regarding the court's jurisdiction over the alter ego controversy in light of the pending bankruptcy of Center Service.  A briefing schedule was established to address that issue.  (Dkt. 22).

The present motion for civil contempt was filed on March 26, 2013. (Dkt. 27). The motion was responded to on April 16, 2013. (Dkt. 29, 30). The NLRB filed a reply on April 22, 2013. (Dkt. 33). The court ultimately determined, on May 2, 2013, that it had jurisdiction to adjudicate the alter ego controversy involving Home Service, even if Central Service was in bankruptcy. (Dkt. 34). Thereafter, the resolution of the alter ego issue and the present motion for contempt were referred to the undersigned on May 2, 2013. (Dkt. 35).

An evidentiary hearing was held on July 31, 2013, where evidence regarding the alter ego issue as well as the contempt motion was presented.[1] The NLRB filed a post-hearing supplemental brief regarding the contempt motion on August 14, 2013. (Dkt. 44). Home Service filed a post-hearing supplemental brief on August 28, 2013. (Dkt. 46). The NLRB thereafter filed a motion to strike certain exhibits Home Service had attached to its response. (Dkt. 47). That motion was also referred to the undersigned. (Dkt. 48). Home Service filed a response to the motion to strike on September 12, 2013. (Dkt. 51).[2]

## II.    RELEVANT FACTS

---

[1]  The Emergency Motion to Vacate the Protective Restraining Order (Dkt. 8), which relates to the alter ego issue,  will be resolved via separate order.

[2]  Because this motion is non-dispositive, it will technically be disposed of via separate order, although it will be discussed in this report and recommendation as it is related to the motion for contempt.

The NLRB served Home Service, through counsel, with the PRO on the morning of November 1, 2012.  On the afternoon of that day, a considerable amount of money, approximately $63,000.00, was withdrawn from Home Service's account at Fifth Third Bank, the bank that the writ of garnishment was directed to, and that cash was placed in a safe at the business location and home of Matthew Welsh, the owner of defendant Home Service.  (Dkt. 43, Pg ID 910). Home Service filed an emergency motion to vacate the PRO on November 5, 2012 and a hearing was held on that motion on November 8, 2012.  During the hearing on that motion, counsel for Home Service did not indicate that cash had been removed from the account but argued that if Home Service could not access the money in the account Home Service could not continue to operate.  (Dkt. 26, Pg ID 8-10).  Counsel for the NLRB indicated that as long as the hearing on the alter ego issue was held within a couple of weeks, it was willing to agree to release the garnishment, giving Home Service access to the funds, as long as Home Service was providing a report every two weeks regarding what they were spending their money on.  (Dkt. 26, Pg ID 20).  Counsel for Home Service indicated that they could agree to permitting the PRO to stay in place if the writ of garnishment was lifted and they would agree to provide information regarding the expenditures on a bi-weekly basis.  The writ of garnishment was thereafter lifted based on the stipulation of the parties.  (Dkt. 15)  The PRO was never amended.  The hearing

on the alter ego issue was scheduled to take place on December 19, 2012, but, as indicated above, the hearing was sidetracked due to the jurisdictional question regarding the Center Service bankruptcy.

Expenditure reports were produced by Home Service on December 4, 2012, December 13, 2012, December 26, 2012, March 18, 2013, and April 4, 2013. (Dkt. 44, Pg ID 936-37). Home Service contends it made a good faith effort to comply with its agreement to produce the reports, but the effort to do so was much greater than Home Service had anticipated it would be, given the limited number of people employed by Home Service who could prepare the report.

During the evidentiary hearing on July 31, 2013, Matthew Welsh was called by the NLRB as a witness regarding the motion for contempt. Mr. Welsh testified that he was the sole owner and only corporate officer of Home Service. (Dkt. 43, Pg ID 907). He acknowledged that he withdrew funds from the Home Service accounts at Fifth Third Bank on the afternoon of November 1, 2012, and put those funds in a safe located at the business premises. (Dkt. 43, Pg ID 908-10). He further testified that, as president of Home Service, he receives a monthly draw as his compensation and in November of 2012, that draw was $6,000.00. (Dkt. 43, Pg ID 911). The draw amount remained the same in December and in January it was increased to $7,000.00 and it was increased again to $8,000.00 in February of 2013. It has been at that amount since then, at least up to the time of the

evidentiary hearing.  (Dkt. 43, Pg ID 913).

Mr. Welsh also testified that Home Service paid rent to Kristina Welsh in the amount of $9,600 per year for 2012 and 2013 although rent was not paid prior to 2012.  (Dkt. 43, Pg ID 914-18).  The single payment for the entire year of 2012 was made in October of 2012 and the single payment for the entire year of 2013 was made in March of 2013.  *Id.*  The March 2013 check to Kristina Welsh for rent was never cashed.  (Dkt. 43, Pg ID 930).

The business location for Home Service was located at 5126 Palomar Drive, which was also the residence for Mr. Welsh and his wife Kristina Welsh.  Home Service occupied one of the three bedrooms in the home as an office and also occupied two out-buildings on the premises.  (Dkt. 43, Pg ID 915-17).  Home Service paid the entire Consumers Energy bill, the entire cable TV bill, and the entire sewer bill for the premises.  (Dkt. 43, Pg ID 922-24).  The practice of paying the entire utility bill for the premises began prior to the PRO being entered.  (Dkt. Pg ID 929-30).

## III.   ARGUMENTS OF THE PARTIES

The NLRB contends that Home Service violated the PRO and should be held in contempt for doing so.  Its argument was initially based on the claims that Home Service dissipated assets by withdrawing money from its bank account following service of the PRO, failed to provide expenditure reports, and failed to

obtain the agreement of the NLRB, or an order of the court, before paying Kristina

Welsh money.  (Dkt. 27, Pg ID 454).  The NLRB supplemented their claims

regarding dissipation of assets by including the additional claims that Home

Service was paying the entire utility bills for the residence/office, although the

office only occupied a portion of the premises and that "raises" given to Mr.

Welsh were not justified by any business reason.  (Dkt. 44, Pg ID 942-44).

    Home Service responded to the motion for contempt initially contending

that it had not received notice of the PRO before withdrawing funds from the Fifth

Third Bank accounts, that the PRO had never been amended to include the

expenditure reporting requirement, that Home Service had done everything it

could to comply with its agreement to provide those reports, that withdrawing

funds from the Fifth Third Bank accounts was not an attempt to hide assets, and

that the "rent" payment to Kristina Welsh was a reasonable business expense.

(Dkt. 30, Pg ID 634-42).

    In its post-hearing brief, Home Service argued that the NLRB should not be

permitted to raise the issues associated with the payment of utilities by Home

Services or the increase in Mr. Welsh's draw because those issues had not been

raised in the initial motion.  Additionally, Home Service contended that it had

reasonably attempted to provide the expenditure reports, but that the effort was

much greater that initially believed, that the NLRB had all reports and information

they had requested, that it had not attempted to hide any assets and in fact there was more money in the Fifth Third Bank accounts at the time of the hearing than when the PRO was served, that the increase in Matthew Welsh's draws were not in violation of the PRO, and the payment of the utilities for the business location did not violate the PRO because those utilities had been paid in the same manner before the PRO was entered.  (Dkt. 46, Pg ID 1032-43).

## IV.    ANALYSIS AND CONCLUSIONS

In order to hold a litigant in civil contempt, the movant must produce "clear and convincing evidence" that demonstrates that the opposing party "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."  *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987).  A party must have actual knowledge of the court's order to be held in contempt of that order.  *In re Jaques*, 761 F.2d 302, 307 n. 3 (6th Cir. 1985).  The opposing party may defend by showing that he or she is unable to comply with the court's order after taking all reasonable steps toward compliance.  *United States v. Rylander*, 460 U.S. 752, 757 (1983).

### A.    Service of the PRO

The NLRB contends that the PRO was served before noon on November 1, 2012, through UPS Overnight Mail, which shows that it was delivered to counsel

for Home Service at 9:44 AM on November 1, 2012.  Admittedly, the PRO was not delivered to the business address of Home Service until November 2, 2012, at 9:43 AM, but the NLRB points to the terms of the PRO which it contends permit service on counsel as proper service.  (Dkt. 27, Pg ID 457).[3]

The response of Home Service to this issue was merely to state that it was not served until November 2, 2012, and did not mention service on its attorney on November 1, 2012. ( Dkt. 30, Pg ID 634).  In its post-hearing brief Home Service stated that "[d]ue to the NLRB's improper actions," regarding obtaining the PRO on an *ex parte* basis, the funds were withdrawn from the Fifth Third accounts. (Dkt. 46, Pg ID 1040).  This statement is essentially an admission that Home Service had actual notice of the PRO, which could only have been from service of the PRO on counsel for Home Service, before withdrawing the funds from those accounts.  Indeed, the withdrawal of those funds within hours of its counsel receiving a copy of the PRO is very strong circumstantial evidence of the fact they were aware of the PRO and their actions were motivated by it.  Based on the above, it is determined that service of the PRO was effected on Home Service in the morning of November 1, 2012, prior to the withdrawal of the funds from the

---

[3] The PRO, entered on October 29, 2012, provided that service could be effected by service on "counsel of record."  (Dkt. 4, Pg ID 230).  As of that date, no attorney had appeared on behalf of Home Service in this litigation, which makes the concept of "counsel of record" in this context somewhat confusing.  This is not an issue raised by the parties and, in the final analysis, may be purely an academic question.

Fifth Third Bank accounts.

B.    Scope of the PRO

A significant part of plaintiff's motion for contempt is based on Home Service's failure to submit expenditure reports every two weeks.  Plaintiff contends that this reporting requirement became part of the PRO because the parties agreed to this reporting requirement during the hearing on the record on November 8, 2012.  A review of the transcript from the November 8, 2012, hearing demonstrates that the parties did put their agreement on the record regarding the expenditure reports ("we're agreeing that every two weeks [Home Service] will just send us a listing of what they're spending their money on") after which Judge Goldsmith stated "Okay."  (Dkt. 26, Pg ID 450-51).  Counsel for the NLRB stated the parties would submit a stipulated order but no stipulated order was submitted regarding the expenditure reports.  Judge Goldsmith's statement "okay" following the parties statement of their agreement does not make that agreement an order of the court.  There may be an agreement between the parties, but it is not part of any order of the court including the protective restraining order, or PRO entered on October 29, 2012.  (Dkt. 4).  In that the promise to provide expenditure reports is not part of an order of the court, the failure to provide the reports consistent with the agreement is not a contempt of the court's order.

The original PRO provided that "within 48 hours of request by the Board, [Home Service would] make available to the Board for inspection and copying, written records of each and every transaction involving expenditure or receipts by [Home Service] in excess of $100."  (Dkt. 4, Pg ID 227).  The NLRB has not made out a case that demonstrates that this provision of the PRO has been violated by Home Service.

    C.    <u>Hiding or Dissipating Assets</u>

        1.    Withdrawal of Funds

The PRO "restrained and enjoined [Home Service and its agents] from in any manner or by any means alienating, dissipating, distributing, transferring, encumbering, assigning, paying over or otherwise disposing of any monies or assets belonging to, or in the possession or control of [Home Service]."  (Dkt. 4, Pg ID 226).  The NLRB argues that the withdrawal of approximately $63,000.00 from the Fifth Third Bank accounts on the afternoon of November 1, 2012, and the subsequent failure by respondent to truthfully identify the amount and location of the funds withdrawn is a violation of the PRO.  (Dkt. 44, Pg ID 939-40).

Home Service, in its post-hearing brief, responds to the claims involving the withdrawal of funds from the bank accounts by arguing the actions of the NLRB in obtaining an *ex parte* order enjoining use of funds in the bank was improper and that any expenditure of those funds was for business expenses permitted by the

PRO.  (Dkt. 46, Pg ID 1040).  Home Service contended that it was forced to "remove" the funds from the bank in order to maintain normal business operations. *Id*.  Mr. Welsh testified that all the money in the safe was used for company expenses.  (Dkt. 43, Pg ID 928).

Whether the NLRB acted properly in seeking to obtain *ex parte* relief in this manner or whether it was appropriate to enter an order similar to the PRO based on these circumstances is not really the point.  The PRO was issued and it is a valid order of the court until it is modified.  The actions of Matthew Welsh, as agent of Home Service, in withdrawing funds from the Fifth Third Bank accounts following service of the PRO, for the acknowledged purpose of avoiding the restrictions imposed by the PRO, violated the PRO.  A party cannot simply pick and choose the court orders that it decides to follow, ignoring those that are inconvenient or difficult and adhering only to those that it does not object to. Home Service had a remedy for objecting to the PRO, which it elected to pursue on November 5, 2012, through its motion to vacate the PRO.  (Dkt. 8).  That motion resulted in a preliminary hearing on November 8, 2012, after which the PRO remained in effect by agreement of the parties and the writ of garnishment was vacated as part of that same agreement.  The NLRB contends it would not have agreed to vacate the writ of garnishment regarding the bank accounts if it had known all the details about the withdrawal of the funds from those accounts that

Report and Recommendation
Motion for Contempt
*NLRB v. Center Construction*; Case No. 11-51480

were withheld at the hearing and for a period thereafter.  (Dkt. 44, Pg ID 940, n. 8).

With respect to the withdrawal of funds from the Home Service account on November 1, 2012, the NLRB asks that Home Service be found in civil contempt and that the majority of those funds ($57,900.00) be turned over to the NLRB to be maintained in escrow pending a ruling on the alter ego issue and that the NLRB be awarded costs and attorney fees.  (Dkt. 44, Pg ID 946-47).

"Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes:  to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. ... Where compensation is intended, a fine is imposed, payable to the complainant.  Such fine must of course be based upon evidence of complainant's actual loss..."  *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947).  "An award of attorney's fees to compensate the plaintiff is within the Court's civil contempt powers."  *Hertz v. Miller*, 2011 WL 611893 *4 (E.D. Mich. 2011).  Additionally, in fashioning a remedy for civil contempt a court may consider the need to vindicate its judicial authority.[4]

Regarding the withdrawal of funds from the bank account, the conduct

---

[4]  While normally associated with criminal contempt, vindication of the court's authority is also a permissible consideration in addressing civil contempt.  *United States v. Work Wear Corp.*, 602 F.2d 110, 115 (6th Cir. 1979).

clearly violated the PRO.  However, the NLRB has not demonstrated any resulting

prejudice from that conduct.  The NLRB has argued that certain payments made

by Home Service since the entry of the PRO violated the PRO, but none of those

were necessarily made from the funds that were withdrawn from the bank accounts

and held for a period of time in the form of cash in a safe at the business premises

of Home Service.  It did take some time for the NLRB to find out what had

happened with those funds and to have the money returned to a bank account. but

no evidence has been presented that shows that the money transferred to the safe

was misused by Home Service.  Although the undersigned concludes that Home

Service violated the PRO by withdrawing money from its bank account shortly

after being served with the PRO, without a showing of prejudice to the NLRB

regarding those funds, no compensatory sanction is imposed against Home

Service.  Home Service has returned the money to the account that had been

withdrawn and, therefore, no coercive sanction is necessary to resolve that issue.

Of primary concern to the undersigned is the conduct of Home Service that

was in violation of the court's order and the need to vindicate the authority of the

court.  Given the circumstances involved in this case, the undersigned determines

that a sanction in the form of a $1,000.00 fine imposed against respondent Home

Service, and payable to the NLRB, adequately vindicates the court's authority.

While the undersigned recognizes it has discretion to award costs and attorney

Report and Recommendation
Motion for Contempt
*NLRB v. Center Construction*; Case No. 11-51480

fees as part of a contempt sanction, it is determined that such an award is not warranted in this situation.

The NLRB requests that improperly expended funds be paid into an interest bearing account that it will maintain until the alter ego issue is decided.  The undersigned does not believe that such a remedy is necessary or appropriate in these circumstances.  Home Service is not a large business and requiring them to pay significant sums of money into an account maintained by the NLRB would likely doom the Home Service business which, in the long run, would reduce the likelihood of Home Service being able to satisfy a judgment if one is rendered against it.  Further, that remedy would also be inconsistent with the spirit of the PRO, which is intended to allow Home Service to operate its business while this litigation continues as long as its conduct is in conformity with the terms of the PRO.  As long as all financial transactions are conducted through the bank account and periodic expenditure reports are provided to the NLRB so that they can be monitored by the NLRB for compliance with the PRO, the undersigned does not feel it is necessary for any funds to be paid into an account maintained by the NLRB.

The PRO also provided that Home Service could "expend funds for the payment of [its] bona fide, reasonable and necessary current business expenses, or to satisfy federal, state, county and local taxes or bona fide liens of record

recorded prior to the entry of this Order [but] that in no event shall any payment or transfer of funds be made to any relative of any of [a Home Service principal] or other entity owned or controlled ... by [Home Service] absent prior written agreement of the Board or further order of this Court."  (Dkt. 4, Pg ID 226-27). The NLRB claims that this provision of the PRO was violated by the actions of Home Service in (1) paying rent to Kristina Welsh, (2) paying the entire utility bills for 5126 Palomar Drive when the business only occupied a portion of the premises, and (3) paying "raises" to Matthew Welsh.  (Dkt. 44, Pg ID 940-946).

Home Service objects to the claims regarding the payment of utility bills and "raises" to Matthew Welsh based on the argument that these issues were not raised in the original motion and that the NLRB had notice of the underlying facts as to these issues prior to the July 31, 2013 hearing and therefore should have amended the motion to add these claims if it sought to do that.  Without a doubt, the claims involving utility bills and "raises" were not specifically included in the initial motion of the NLRB.  However, the NLRB did generally argue that Home Service was improperly "dissipating" assets through payment of expenses that were neither reasonable nor necessary and the utility bill and "raises" issues fall within that category.  Home Service contends that the NLRB should have known about these issues prior to the hearing based on records it was provided but it is not exactly clear when the facts associated with these issues were known to the

NLRB.  The NLRB has pointed out that the information from Home Service was provided on an irregular basis and that generally has been acknowledged by Home Service through its defense to this motion by demonstrating the difficulty in producing the expenditure reports on a timely, regular basis.  Additionally, some of the information was not completely brought out until the July 31, 2013 evidentiary hearing. The objection by Home Service as to the timing of the utility bills and "raises" issues is overruled.

      2.     Rent Payments To Kristina Welsh

To the extent these challenged payments were made after the PRO was entered, in the same or similar manner they had been made before the PRO was entered, it cannot be said they violated the "reasonable and necessary" limitation in the PRO in the sense that they were not solely, or even primarily, intended as a method of hiding or dissipating assets in order to keep them from the NLRB.  The payment to Kristina Welsh for rent in the form of a check to her does violate the terms of the PRO prohibiting "payment ... to any relative" in that it was not done with prior court approval or the agreement of the NLRB.  However, the check was never cashed and therefore the NLRB has not demonstrated any prejudice from this payment.  The NLRB does not argue that it is improper to pay rent to Kristina

Welsh under any circumstances or that the amount of rent is not reasonable.[5]

Therefore, respondent may pay rent in the amount of $800.00 per month to

Kristina Welch, but the payment must be for "current" expenses, which means that

respondent cannot pay for rent in advance as was originally intended in this

instance.

        3.      Payment of 100% of Utility Bills

      While made in the same manner as it had been before entry of the PRO, the

payment of 100% of the utility bills for the business/residence when the business

only occupies a portion of the residence is not "reasonable" within the meaning of

the PRO.  The NLRB contends that a proper allocation of those bills is that only

one-fifth of the bill should be allocated to the business and four-fifths to the

residence.  (Dkt. 44, Pg ID 943-44).  Respondent defends this claim by arguing

that it was merely paying the same utility bills it had been paying before the PRO

was entered and, therefore, it has not violated the PRO and if the NLRB wanted to

restrict the payment of utility bills it could have included that in the PRO.  (Dkt.

46, Pg ID 1043-44).  Respondent apparently takes the position that no allocation

of the utility bills is warranted.

      The undersigned declines to conclude that respondent knowingly violated

---

     [5]  At one point the NLRB argued that the rental agreement was not an arm's length business transaction but that, in and of itself, does not establish that it the agreement was improper.

the PRO by paying 100% of the utility bills when that was consistent with the practice it had followed up to that point.  However, the undersigned does conclude that it is not "reasonable" for respondent to pay 100% of the utility bills when it was occupying only a portion of the premises.  While not a contempt of the PRO, such action by respondent does violate the terms of the PRO and the NLRB is entitled to relief of some kind.  The one-fifth allocation suggested by the NLRB is too limited an allocation based on this record.  Considering only the square footage in the home does not reflect what might be disproportionate usage by the business and Matthew Welch testified that the business also used outbuildings on the premises.  Without a more specific evidentiary basis from which to allocate utility usage, the undersigned finds that a fifty-fifty allocation is reasonable under the circumstances.  Any utility bill that respondent paid 100% of following entry of the PRO violates the "reasonable" limitation of the PRO.  The remedy for this violation is that Matthew Welsh will deposit half of all utility bills paid since entry of the PRO into respondent's bank account, and pay half of all future bills, or, respondent will not pay any portion of future utility bills for the premises until the fifty-fifty allocation has been achieved.  This procedure will be followed until a decision on the alter ego issue is finalized.

   4.    Raises to Matthew Welsh

Regarding the "raises" to Matthew Welsh, the NLRB maintains that any

increase in the "draw" by Mr. Welsh is a dissipation of respondent's assets.  Mr.

Welsh had taken a monthly "draw" from the business, as owner of the business,

because he was not issued a paycheck.  The NLRB does not argue that any "draw"

by Mr. Welsh is improper but does argue that the increases, without related

justifications, is a dissipation of the respondent's assets in violation of the PRO.

Respondent contends that Mr. Welsh was entitled to take a "draw" and therefore

continuing to take a "draw" after the PRO did not violate the PRO.

Mr. Welsh's "draw" went from $6,000.00 a month in November of 2012, to

$7,000.00 in January of 2013, and to $8,000.00 in February of 2013, where it has

remained since then.  (Dkt. 43, Pg ID 911-13).  Mr. Welsh testified that the

increase was warranted by the extra work he had to perform in order to meet the

reporting requirements of financial transactions to the NLRB.  *Id*.  While the 33%

increase in the "draw" over a three month period is significant, it is not so large

that the only conclusion one could reach is an attempt to dissipate assets and does

not constitute clear and convincing evidence of a violation of the order.  Mr.

Welsh stated that he spent considerably more time at work as a result of the reports

that he was required to provide and there was no real evidence to contradict that

testimony or challenge its sincerity.  *Id*.  Mr. Welsh made no attempt to hide these

transactions and there is some basis for the increase.  The undersigned finds that

increasing the monthly "draw" in the amounts reflected on this record did not

violate the PRO.

D.    Motion to Strike (Dkt. 47)

In filing its post-hearing brief, respondent Home Service attached two

exhibits, Exhibits F and G, to the brief.  The NLRB contends that it was improper

for respondent to do that and has filed a motion to strike.  (Dkt. 47).  The

challenged exhibits purport to be copies of emails exchanged between counsel for

the NLRB and counsel for respondent.  Home Service filed a response to the

motion arguing that the additional documents were permitted by the court during

the hearing when the NLRB offered an exhibit, Exhibit 2, which consisted of a

series of emails between counsel.  (Dkt. 51).

A review of the transcript for the hearing indicates that counsel for Home

Service pointed out during the hearing that the emails included in proposed

Exhibit 2, an exhibit offered by the NLRB, were not complete and counsel for the

NLRB acknowledged that.  (Dkt. 43, Pg ID 905).  The undersigned then suggested

that Home Service could supplement the record regarding the missing emails if it

wished to do that.  *Id*.  This is apparently what was done in Home Service

attaching Exhibits F and G to its post-hearing brief.

In that this challenged supplementation was permitted by the court, the

motion to strike filed by the NLRB will be denied.  Additionally, the information

contained in Exhibits F and G played no part in the decision by the undersigned

Report and Recommendation
Motion for Contempt
*NLRB v. Center Construction*; Case No. 11-51480

regarding the motion for contempt filed by the NLRB.

## V.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that petitioner's motion for contempt be **GRANTED** in part and **DENIED** in part.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

Report and Recommendation
Motion for Contempt
*NLRB v. Center Construction*; Case No. 11-51480

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 31, 2013                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 31, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kelly M. Kammer, David H. Mori, Scott Preston and Sarah Pring Karpinen.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov